**PADUCAH MARINE WAYS, Petitioner,**

v.

**Maurice THOMPSON; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 95–3290.**

United States Court of Appeals, Sixth Circuit.

Submitted March 26, 1996.

Decided April 24, 1996.

---

William E. Pinkston (briefed), Denton & Keuler, Paducah, for Paducah Marine Ways.

J. William Phillips (briefed), Murray, KY, for Maurice Thompson.

Marianne D. Smith (briefed), U.S. Dept. of Labor, Office of Sol., Washington, DC, for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Before: KENNEDY and MOORE, Circuit Judges; WELLS, District Judge.*

MOORE, Circuit Judge.

■ Petitioner Paducah Marine Ways ("PMW") seeks review of the decision of the Benefits Review Board of the United States Department of Labor (the "Board") that claimant Maurice Thompson timely filed his claim for benefits under the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), 33 U.S.C. §§ 901–950. PMW argues that Thompson's claim was barred by the one-year statute of limitations for LHWCA benefit claims contained in 33 U.S.C. § 913(a). This presents an issue of first impression in this circuit: at what point does the statute of limitations begin to run under section 913(a) where there is a time lag between an employee's injury and his knowledge of the extent of the injury and its impact on his earning capacity. We join the other circuits that have addressed this issue, and hold that the section 913(a) statute of limitations begins to run only after the employee becomes aware of the full character, extent, and impact of the injury. Thus, we hold that Thompson timely filed his claim.

---

* The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

**I**

PMW employed claimant Thompson as a welder for sixteen years. Thompson's job as a welder involved heavy, strenuous work, such as carrying heavy loads and crawling through tight spaces. PMW laid off Thompson in September 1983 for reasons unrelated to this case, and PMW closed thereafter.[1]

Thompson suffered four back injuries while he was working at PMW. The first injury occurred in 1972 when Thompson threw his welding cable on top of a barge. Thompson was treated for a back strain by a doctor who prescribed rest and pain pills. Thompson missed four weeks of work after that injury.

Thompson again injured his back at work in 1976, when he stepped into an access hole on a barge and fell back against the edge of the access hole. Although one doctor told Thompson that he might have pinched a nerve in his back, the specialist who treated Thompson diagnosed his condition as a "tired back." Thompson missed several weeks of work due to this injury, and he testified that after this injury, his back sometimes would become stiff and sore while he was working.

In 1978, Thompson again injured his back while working for PMW. He slipped and fell while trying to get through a narrow space in a barge. Thompson was again treated for a back strain, and rest and pain medication were prescribed. Thompson's treating physicians apparently diagnosed a possible herniated disc at that time, but Thompson testified that no physician told him about his possible disc problem. Thompson testified that his back was sore after he returned to work seventeen weeks after the injury, but that he could "take the pain and work."

Finally, Thompson injured his back while picking up a steel plate at work in 1979. His physician again diagnosed a back strain, which was treated with rest and medication. Thompson was off of work for two weeks. Thompson testified that his back was painful at times after he returned to work. Thus, Thompson injured his back on four different

---

1. According to petitioner, PMW was dissolved in 1989, but another corporation, Enron Corp., is the payor of benefits in this matter.

occasions during the 1970s while at work for PMW. Each time, however, he returned to work at PMW, after recuperating for two to seventeen weeks, and he worked for more than three years after his last injury.

After PMW laid off Thompson for unrelated reasons in 1983, he worked for his cousin stripping tobacco. Thompson testified that his back hurt while he was stripping tobacco, but that tobacco stripping was not strenuous work. Thompson also cut wood with a chainsaw. Thompson testified that he woke up in extreme pain on January 28, 1984, after cutting wood the previous day. An orthopedic surgeon diagnosed Thompson's herniated disc problem; Thompson later had surgery, during which two herniated discs were removed.

On June 12, 1984, Thompson filed a claim for LHWCA benefits based on the back pain from the herniated discs. PMW contested the claim. In 1985, an administrative law judge (an "ALJ") held a hearing on Thompson's claim, and in 1986, the ALJ issued an order awarding benefits to Thompson. PMW appealed the ALJ's decision to the Board. In March 1989, the Board affirmed the ALJ's ruling awarding benefits, but remanded to the ALJ for a determination of the amount of benefits owed. Both PMW and Thompson moved for reconsideration of the Board's order, and the Board essentially reaffirmed its earlier decision. In April 1991, the ALJ issued his decision on the amount of benefits issue that had been remanded to him by the Board, and in January 1995, the Board affirmed the ALJ's decision. On March 10, 1995, PMW filed its petition for review in this court, seeking review solely on the issue of whether Thompson's claim is barred by the section 913(a) statute of limitations.[2]

## II

■ This court has jurisdiction over petitions for review of final decisions of the Board pursuant to 33 U.S.C. § 921(c). We engage in limited review of Board decisions, reviewing Board decisions only to correct

errors of law and to ensure that the Board adhered to the substantial evidence standard mandated by section 921(b)(3) for its review of the ALJ's factual findings. *Director, Office of Workers' Compensation Programs v. Detroit Harbor Terminals, Inc.*, 850 F.2d 283, 287 (6th Cir.1988). This court has plenary authority to review the Board's legal conclusions, and reviews such conclusions de novo. *American Ship Building Co. v. Director, Office of Workers' Compensation Programs*, 865 F.2d 727, 730 (6th Cir.1989).

■ In determining whether the Board has properly adhered to its substantial evidence standard of review, we must review the record independently to determine whether the ALJ's findings are supported by substantial evidence. *Brown v. ITT/Continental Baking Co.*, 921 F.2d 289, 293 (D.C.Cir.1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir.1989). The record must be reviewed " 'as a whole,' including 'whatever in the record fairly detracts from its weight.' " *Mullen v. Bowen*, 800 F.2d 535, 545–46 (6th Cir.1986) (en banc) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)).

The LHWCA statute of limitations currently is provided by 33 U.S.C. § 913(a). The Supreme Court interpreted the predecessor to this statute of limitations in *Pillsbury v. United Engineering Co.*, 342 U.S. 197, 199–200, 72 S.Ct. 223, 224–25, 96 L.Ed. 225 (1952), where the Court held that the statute of limitations began to run on the date upon which the work-related injury occurred. Section 913(a) was amended in 1972, and the last sentence, which tolls the statute until the employee is aware of the relationship between the injury and the employment, was added. *See Cooper Stevedoring of La., Inc. v. Washington*, 556 F.2d 268, 269 n. 1

---

**2.** We note that almost eleven years passed between the filing of Thompson's claim for benefits and the conclusion of the administrative process

awarding benefits. This is an extraordinary delay in concluding the administrative process.

(5th Cir.1977) (discussing the 1972 amendment to section 913(a)).

The current version of section 913(a) states:

> Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury or death.... The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

The Supreme Court has not interpreted the amended version of section 913(a). However, all of the courts of appeals that have interpreted the amended section 913(a) have held that the statute of limitations begins to run only after the employee becomes aware or reasonably should have become aware of the full character, extent, and impact of the injury. Although these courts have stated the test in different ways, they generally have held that the employee is aware of the full character, extent, and impact of the injury when the employee knows or should know that the injury is work-related, and knows or should know that the injury will impair the employee's earning power. *Abel v. Director, Office of Workers Compensation Programs,* 932 F.2d 819, 821 (9th Cir.1991); *Newport News Shipbuilding & Dry Dock Co. v. Parker,* 935 F.2d 20, 27 (4th Cir.1991); *Brown v. ITT/Continental Baking Co.,* 921 F.2d 289, 294–95 (D.C.Cir.1990); *J.M. Martinac Shipbuilding v. Director, Office of Workers' Compensation Programs,* 900 F.2d 180, 183 (9th Cir.1990); *Brown v. Jacksonville Shipyards, Inc.,* 893 F.2d 294, 296 (11th Cir.1990); *Bechtel Associates, P.C. v. Sweeney,* 834 F.2d 1029, 1033 (D.C.Cir.1987); *Marathon Oil Co. v. Lunsford,* 733 F.2d 1139, 1141–42 (5th Cir.1984); *Cooper Stevedoring,* 556 F.2d at 274. *See also Bath Iron Works Corp. v. Galen,* 605 F.2d 583, 585 (1st Cir.1979) (interpreting identical language in 33 U.S.C. § 912, the LHWCA's notice provision).[3]

This court has not considered the question of when the Section 913(a) statute of limitations begins to run on an LHWCA claim. As noted above, all the courts to have considered the amended version of section 913(a) have held that it begins to run only after the employee becomes or should become aware that the work-related injury will impair the employee's earning capacity. PMW has pointed to no authority to the contrary, and essentially concedes that the impairment standard is the proper standard.

Moreover, the impairment standard is consistent with the LHWCA's public policy goals. The impairment standard does not require employees to protect their rights by filing claims for aches and pains that are not disabling and thus not compensable. As the First Circuit stated while interpreting identical language in section 912(a) of the LHWCA:

> Since the Act exists to compensate a worker for loss of earning power, there is little purpose in penalizing a claimant for not reporting a pain he reasonably did not believe would impair his earning power. A rule requiring earlier notice would force employees to report every ache and sore throat that might lead to eventual disability.

*Bath Iron Works,* 605 F.2d at 586. Indeed, an alternate rule requiring earlier filing of claims could lead to a flood of eventually meritless claims understandably prompted by the fear that delay in filing would make a claim untimely. The impairment standard also does not penalize employees who attempt, even though they experience some pain, to return to work after apparently recovering from an injury. *J.M. Martinac,* 900 F.2d at 184 (adopting impairment standard because "[p]ublic policy is served by not discouraging workers' attempts to return to

---

3. 33 U.S.C. § 912(a), as amended in 1984, requires employees to give their employers notice of injuries. The statute provides:

Notice of an injury or death in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury or death, or thirty days

after the employee or beneficiary *is aware or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of a relationship between the injury or death and the employment.* ...

33 U.S.C. § 912(a) (emphasis added).

work and by not encouraging premature claims of permanent disability."). Construing section 913(a) to toll the statute of limitations until the employee is or reasonably should be aware of the permanence of the disability also is in keeping with the liberal construction to be given the LHWCA in light of its humanitarian purpose. *See ITT/Continental Baking,* 921 F.2d at 294 n. 4. Therefore, we hold that the LHWCA statute of limitations begins to run only when the employee knows or reasonably should know that the injury is work-related, and knows or reasonably should know that the injury will impair the employee's earning capacity.

## III

■ The ALJ's decision that Thompson first became aware that his earning power was impaired in 1984, when his disc problem was diagnosed, is supported by substantial evidence in the record as a whole. Although PMW produced a document that stated that one of Thompson's doctors diagnosed a possible disc problem earlier than 1984, the ALJ was entitled to credit Thompson's testimony that he had not seen the document after the doctor wrote his possible diagnosis on it, and that the doctor never informed Thompson of the possibility of a disc problem. Thompson came back to work at PMW after each of his injuries, and although his back was sore, he continued to work. Because Thompson's back problems did not cause him to be unable to work at that time, his earning power was not impaired. Thus, until his disc problem surfaced and he was unable to work beginning in 1984, Thompson had no impairment of which he could be aware.

■ PMW asserts that Thompson was aware that his earning power was impaired when he had to miss weeks of work after his various accidents. This argument fails to recognize the difference between a temporary and a permanent disability. A temporary inability to work while recuperating from an accident does not put an employee on notice that his earning power has been permanently impaired, particularly when the employee returns to work and works for substantial time periods after he recuperates. *J.M. Martinac,* 900 F.2d at 184 (ALJ erred by finding that the statute of limitations began running when the employee was tempo-

rarily unable to work). PMW also argues that Thompson's testimony that he frequently worked with a sore back should have alerted him to the seriousness of his back injury and to the possibility of an impairment of his earning power. Again, this confuses short-term and long-term effects; experiencing pain after an accident, particularly when that pain does not prevent the employee from working, does not put the employee on notice of a likely impairment of long-term earning capacity. *Newport News,* 935 F.2d at 27 ("[T]he experiencing of pain after an accident is insufficient as a matter of law to establish an awareness of a likely impairment of earning power.").

The section 913(a) statute of limitations begins to run only when the claimant is aware or reasonably should be aware both that the injury is work-related, and that the injury will impair the claimant's wage-earning capacity. The ALJ's finding that Thompson first became aware that his injury would impair his wage-earning ability in 1984, when his herniated discs were diagnosed, is supported by substantial evidence in the record as a whole. Therefore, the section 913(a) statute of limitations began running in 1984, making Thompson's claim timely filed. Thus, the petition is denied, and the Board's decision is **AFFIRMED.**